UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| JANINE S. CHANDLER, | ) | Case No.: 10-CV-02452-LHK |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR |
| v. | ) ) | WRIT OF HABEAS CORPUS |
| MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation, and VELDA DOBSON-DAVIS, Warden, | ) ) ) ) | |
| Respondents. | ) ) ) ) | |

Petitioner, a California prisoner currently incarcerated at Valley State Prison for Women in Chowchilla, California has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner asserts three claims for habeas relief: (1) ineffective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution on the ground that trial counsel failed to present case-specific expert evidence that Petitioner was the victim of intimate partner abuse in support of her self-defense argument; (2) ineffective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution on the grounds that trial counsel failed to present other available factual evidence of Petitioner's intimate partner abuse-related defense and failed to object to prejudicial and irrelevant evidence offered by the prosecution; and (3) denial of right to confront witnesses under Fifth, Sixth, and

1

1    Fourteenth Amendments to the U.S. Constitution on the grounds that hearsay testimony of Gregory

2    Chandler, a key witness who had allegedly gone into hiding, was admitted at Petitioner's trial

3    without the prosecution acting in good faith to locate that witness.

4         On June 14, 2010, the Court ordered Respondent to show cause why the petition should not

5    be granted.  ECF No. 7.  Respondent filed an answer addressing the merits of the petition on

6    September 12, 2011, ECF No. 19, and Petitioner filed a reply on December 12, 2011, ECF No. 25.

7    Having reviewed the briefs and the underlying record, the Court DENIES the petition for the

8    reasons set forth below.

9                                       **BACKGROUND**

10        Federal courts reviewing habeas petitions are instructed to presume that the factual

11   determinations of state courts are correct unless that presumption is rebutted by clear and

12   convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (2006).  Accordingly, the factual background

13   provided by the California Court of Appeal in its review of the case on direct appeal, *People v.*

14   *Chandler*, No. A114037 (Cal. App. 1 Dist. Feb. 18, 2009) (Exhibit A), will serve as the factual

15   framework for this habeas review.

16        Prosecution's Case

17        Gregory Chandler[1] and Petitioner were married in 1999.  They lived together in an

18   apartment in Antioch.  On the evening of September 1, 2002, Tiffany Donaville visited Gregory at

19   the Chandlers' apartment.  Gregory testified at the preliminary examination[2] that when he and

20   Donaville entered the apartment, they had no idea that Petitioner was there, and Gregory had been

21   trying to telephone Petitioner when he heard a shot.  He saw Petitioner holding a gun; she told him

22   she was "tired of the butt whippings."  He made some threatening remarks, and the next thing he

23   knew, he'd been shot.  After struggling with his wife, Gregory recovered the gun, and hit Petitioner

24   in the face with it.  He then called 911.

25        Shortly after midnight, Antioch police officers were dispatched to the Chandlers'

26   ───────────────────────
     [1] To avoid confusion, Gregory Chandler will be referred to as "Gregory," and Janine Chandler as
27   "Petitioner" or "Janine."
     [2] Gregory did not testify at trial, as the prosecution was unable to locate him.  Instead, his
28   preliminary examination testimony was read to the jury.  *See* Exh. A at 13.  This forms the basis for
     Petitioner's third claim.

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**United States District Court**
For the Northern District of California

1   apartment, where they found Petitioner and Gregory, who was bleeding from a gunshot wound to

2   the right arm.  A two-shot .38 derringer was lying on the floor; the gun had blood on it, and both

3   shells had been fired.  As the officers entered, they heard Gregory say "She shot me," and observed

4   him point to Petitioner.  Petitioner then said, in an angry tone, "That's what happens when you

5   bring that bitch into . . . my house."

6        The officers discovered Donaville's body in the kitchen.  She had been shot once in the

7   back.  Petitioner was arrested and taken to the police station, where she was described as looking

8   calm but clearly distracted, telling one officer that "she did not remember what hand she fired the

9   gun with."

10       Two police officers talked to Gregory after he was taken to the hospital.  He told them that

11  he picked up Donaville and took her to the apartment intending "to have drinks and sexual

12  intercourse."  When he was in the kitchen getting drinks, he heard shots being fired.  Gregory

13  specifically told the officers that Petitioner said "You brought that bitch into my house" while

14  Gregory was still in the kitchen, before she fired at him.  She then pointed the gun at Gregory's

15  chest and said "Goodbye, motherfucker."  As she fired, Gregory "instinctively raised his right arm

16  to try and block the shot."  He struggled with Petitioner for the gun.  He also told the officers that

17  he and Petitioner had been arguing about "other women" for several days prior to the date of the

18  shooting.  Gregory expressed his opinion that Petitioner had been hiding in a closet before

19  emerging and beginning firing, and said he did not want to "pursue charges" against Petitioner.

20       Defense cross-examination of the officers revealed that Gregory had felony convictions for

21  possessing a sawed-off shotgun, domestic violence, making terrorist threats against a woman,

22  residential burglary, selling drugs, and attempting to prevent a witness from testifying.

23       The lead detective on the case testified that his conclusion, based on what Gregory told

24  him, was that Petitioner was "lying in wait" in the apartment for several hours before she emerged

25  from a closet and began shooting.  Gregory also told this detective that he had been shot before.  A

26  records check showed that the derringer was registered to Petitioner.

27       A subsequent search of the bedroom disclosed two photo albums with pictures of women in

28  what an officer described as "various states of dress, undress" and some magazines which were

3

"pornographic in nature.  They were swinger type magazines, alternative sexual lifestyle magazines."  The officers also found a home computer.  Examination of the hard drive's files showed that Gregory and Donaville exchanged emails from June 27, 2002 to August 12, 2002.  Other evidence showed that Petitioner and Gregory were, in the words of one of the experts, "using the Internet to have relationships with other individuals."  There was also a file with numerous "sexually explicit" photographs of Petitioner and Gregory and "chat logs" of emails that were "of a sexual nature with other couples."

Defense Case

The defense introduced evidence that, prior to marrying Petitioner, Gregory had three relationships with women that were punctuated by violence, threats, and verbal abuse, which continued even after each of the women ended the relationship.  The defense also produced several witnesses who testified to seeing Petitioner repeatedly exhibiting injuries and bruises following her marriage to Gregory.  One of these witnesses saw Gregory hit Petitioner, and several of the witnesses heard Petitioner express anger at Gregory's infidelity.

Petitioner testified that after she married Gregory he became possessive and controlling.  Arguments became common, physical violence not infrequent.  Soon after they were married, Petitioner learned that Gregory had gone to prison because he "broke into a woman's house, beat her, and threatened her."  Petitioner knew Gregory cheated on her, which made her angry.  Petitioner further testified that she knew about Gregory's interest in Donaville because she read his e-mails.

Petitioner testified that on the afternoon of September 1, 2002, the day of the shooting, she was in the apartment's storage room when she heard Gregory come home.  She heard Gregory calling her pager; the calls went on for several hours, with Gregory becoming increasingly angry.  Petitioner continued to hide under a bed because "[i]f he knew I was already there and I didn't answer at first, there would have been another fight," and another fight "means me being hit."

According to Petitioner, she fell asleep, and when she awakened, she saw Gregory asleep on the living room sofa.  Petitioner returned to the storage room, where she hid and fell asleep again.  Because she had her pager with her, Petitioner knew that Gregory's messages had become

United States District Court
For the Northern District of California

1 more menacing.

2         Petitioner further testified that when she awoke for the second time, she heard unfamiliar

3 voices.  Carrying the derringer, which was kept in one of Gregory's boots in the storage room and

4 was always loaded, Petitioner tried to leave the apartment, but seeing that Gregory was in the

5 kitchen, realized that she could not get out.  Gregory spotted her and yelled, "What the fuck are

6 you doing here?" and "I'm gonna kick your ass."  When Gregory moved toward her, Petitioner

7 fired at him.  She cocked the derringer when Gregory came at her, and he grabbed her hands and

8 began hitting her.  Petitioner remembered that "[t]he gun fires again when he's hitting me, and

9 we're falling into the living room."

10         Asked in direct examination "Did ... you shoot Tiffany Donaville in the back?" Petitioner

11 answered: "No.  I didn't even know she was shot in the back until later."  When repeatedly asked

12 on cross-examination: "It's been three years since you killed Tiffany Donaville, right?," Petitioner

13 only replied "It's been three years since she died, yes."  Petitioner testified that the first shot she

14 fired hit Gregory in the arm, and the second shot was fired while she and Gregory were wrestling

15 for the gun.  Petitioner was trying to shoot Gregory with the second shot, but she did not intend to

16 kill him with either shot; and she never aimed the gun at Donaville.

17         Petitioner testified on cross-examination that she transmitted images "of a sexual nature"

18 over the Internet using a webcam, and that she was "sometimes" forced to do that by Gregory, but

19 that "sometimes" she enjoyed doing it.  Petitioner conceded that she could have escaped from the

20 apartment while Gregory was sleeping, and when he and Donaville were in the kitchen.  After

21 Gregory telephoned for police, Petitioner got a towel to stop his bleeding.

22         Psychologist Marjorie Cusick testified as an expert on domestic violence and Battered

23 Women's Syndrome.  Cusick testified that women in an abusive relationship are "very foggy"

24 about the details of events and the history of the relationship.  Such women are at the greatest risk

25 of injury if they try to leave.  Cusick further testified that, like sufferers of Posttraumatic Stress

26 Syndrome or disorder, victims of domestic violence adopt "accommodation" as a "coping

27 mechanism."  She explained: "So what happens is that a victim's life may start out to be this big.

28 And then the more they're involved in this kind of relationship, the smaller their life becomes,

United States District Court<br/>For the Northern District of California

5

because they are totally focused on the abuser and focused on trying not to be abused. Whether that's physically, psychologically, emotionally, that becomes their focus. So they're accommodating the abuser at the loss of a lot of other things that are going on in their lives and a loss of objectivity . . . ."

Cusick also testified that even when the batterers are apprehended, many victims will not cooperate in prosecuting them. Cusick has considerable experience in Oakland and Contra Costa County treating and observing battered women. As between Caucasian and African-American women victims, Cusick noted that while both "have a hard time reporting, . . . [i]n the African-American community, I hear more of a distrust of the criminal justice system, a fear of not getting justice from the criminal justice system, not wanting to be in your community and calling the police . . . . [I]t's something that may be a stigma." Even when a victim "is in a safe place," Cusick said that "they will actually start to minimize and deny the abuse or rationalize it, make sense of it, and start to see the abuser as this person they love . . . . And they'll focus on the positive pieces of their relationship, because that makes them feel better." The victim might then change her story: "[T]he reasons to change the story is about being afraid, is about reconciliation with the abuser, is about the shame of bringing very private material into the public sector. And it's about distrust that anything will be done or that they'll be protected."

The jury deliberated for less than six hours before finding Petitioner guilty as charged. On March 30, 2006, the Contra Costa County Superior Court sentenced Petitioner to a term of 25 years to life for the murder of Donaville, plus 25 additional years for the enhancement required by Cal. Penal Code Section 12022.53, subdivision (d), for use of a firearm causing great bodily injury. An identical sentence was imposed for the attempted murder of Gregory, but this sentence was ordered to run concurrently.

Petitioner filed a direct appeal and a companion habeas petition with the California Court of Appeal. On February 18, 2009, the California Court of Appeal affirmed the conviction and judgment in a written opinion. Ex. A in Support of Petition for Writ of Habeas Corpus.[3] That same day, the California Court of Appeal summarily denied the habeas petition. Ex. B. Petitioner

_____

[3] All Exhibits are attached to the Petition for Writ of Habeas Corpus, unless otherwise noted.

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
For the Northern District of California

then filed a Petition for Review in the California Supreme Court and a petition for a writ of habeas corpus in the California Supreme Court.  On June 10, 2009, the California Supreme Court denied review on direct appeal and summarily denied the habeas petition.  Exs. C & D.  Petitioner filed the instant action on June 3, 2010.

## DISCUSSION

### I. Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a) (2006). Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d) (2006).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor,* 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause of (d)(1), a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

United States District Court
For the Northern District of California

1    erroneously or incorrectly." *Id.* at 411.

2         Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will

3    not be overturned on factual grounds unless objectively unreasonable in light of the evidence

4    presented in the state-court proceeding." *Miller–El,* 537 U.S. at 340.  The Court must presume

5    correct any determination of a factual issue made by a state court unless Petitioner rebuts the

6    presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (2006).

7         In determining whether the state court's decision is contrary to, or involved an unreasonable

8    application of, clearly established federal law, a federal court looks to the decision of the highest

9    state court to address the merits of Petitioner's claims in a reasoned decision.  *LaJoie v. Thompson,*

10   217 F.3d 663, 669 n.7 (9th Cir. 2000).  Here, both the California Court of Appeal and the

11   California Supreme Court denied habeas relief summarily, without a written opinion.

12   Nevertheless, "Section 2254(d) applies even where there has been a summary denial."  *Cullen v.*

13   *Pinholster*, 131 S. Ct. 1388, 1402 (2011).  In such a case, "a habeas court must determine what

14   arguments or theories supported or, as here, could have supported, the state court's decision; and

15   then it must ask whether it is possible fairminded jurists could disagree that those arguments or

16   theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Harrington*

17   *v. Richter*, 131 S.Ct. 770, 786 (2011).  "If this standard is difficult to meet, that is because it was

18   meant to be."  *Id.*

19   **II. Petitioner's Claims**

20         **A.  Ineffective Assistance of Counsel for Failure to Present Credible Case**
21         **Specific Expert Testimony Regarding Intimate Partner Abuse and Its Effects**
             **on Petitioner**

22         Claims of ineffective assistance of counsel are examined under *Strickland v. Washington,*

23   466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, Petitioner must

24   establish two things.  First, she must establish that counsel's performance was deficient, i.e., that it

25   fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at

26   687–68, "not whether it deviated from best practices or most common custom," *Harrington v.*

27   *Richter,* 131 S.Ct. 770, 788 (2011) (citing *Strickland,* 466 U.S. at 690).  "A court considering a

28   claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was

United States District Court
For the Northern District of California

8

within the 'wide range' of reasonable professional assistance." *Richter,* 131 S.Ct. at 787 (quoting *Strickland,* 466 U.S. at 689). Second, she must establish that she was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where a defendant is challenging her conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Courts must afford tactical decisions by trial counsel considerable deference. [C]ourts may not indulge *"post hoc* rationalizations" for counsel's decisionmaking that contradict the available evidence of counsel's actions, nor may they insist that counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Richter,* 131 S.Ct. at 790 (citations omitted).

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Cullen v. Pinholster,* 131 S.Ct. 1388, (2011); *Williams,* 529 U.S. at 404–08. Accordingly, a "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Pinholster,* 131 S.Ct. at 1410–11; *Richter,* 131 S.Ct. at 788); *Premo v. Moore,* 131 S.Ct. 733, 740 (2011). The general rule of *Strickland,* i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington,* 614 F.3d 987, 995 (9th Cir.2010) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'* s deferential standard." *Richter,* 131 S.Ct. at 788. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland

9

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   test if the petitioner cannot establish incompetence under the first prong.  *See Siripongs v.*

2   *Calderon,* 133 F.3d 732, 737 (9th Cir.1998).

3         Petitioner's claim centers around trial counsel's use of Psychotherapist Marjorie Cusick as

4   an expert on intimate partner abuse to aid in Petitioner's defense.  Ms. Cusick testified at trial as an

5   expert in Battered Women's Syndrome (now called intimate partner abuse), domestic partner

6   abuse, and domestic violence, and she educated the jury on all three topics.  Petitioner argues that

7   Ms. Cusick's testimony was insufficient.  In particular, Petitioner contends that her attorney acted

8   unreasonably by only asking Ms. Cusick to testify about domestic partner abuse in general, rather

9   than having her offer her case-specific opinion that Petitioner's behavior on the day of the murder

10  was "consistent with an individual who has experienced intimate partner battering and fears for her

11  safety."  *See* Memorandum of Points and Authorities in Support of Petition for Writ of Habeas

12  Corpus (hereafter "Pet. Mem.") at 17.  Petitioner contends that had Ms. Cusick been allowed to

13  offer her case-specific opinion, it would have corroborated Petitioner's own testimony, bridged the

14  cultural gap between the African-American Petitioner and the mostly white jury, and refuted the

15  prosecution's characterization of Petitioner and her husband as a "high conflict couple."

16        Petitioner's trial counsel has explained that he opted not to ask Ms. Cusick about her case-

17  specific opinions because he did not want to open the door to a potentially damaging rebuttal

18  witness from the prosecution.  *See* Pet. Mem. at 39 (citing Exhibit 9 to the state petition for habeas

19  corpus).  Because Ms. Cusick's case-specific testimony would have suggested that Petitioner acted

20  out of fear of her husband on the night of the shooting, rather than out of jealousy and anger, the

21  prosecutor planned to introduce rebuttal evidence that would have shown that Petitioner was a

22  "willing participant" in "swinger"-type sexual activities who was "more controlling" than her

23  husband and "wanted to be there."  Fearing that such testimony would be detrimental to his client,

24  Petitioner's trial counsel chose to limit Ms. Cusick's testimony to general opinions only.  Ms.

25  Cusick disagreed with trial counsel's decision, and informed him that preventing her from offering

26  her case-specific opinion about Petitioner would be a "big mistake."

27        Petitioner argues that her trial counsel's failure to introduce case-specific expert testimony

28  about intimate partner abuse was unreasonable for five reasons: (1) trial counsel was a novice in

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

intimate partner abuse and failed to heed his expert witness's advice; (2) trial counsel made his

decision without seeking a ruling about the admissibility of a rebuttal witness's testimony; (3) trial

counsel made his decision without exploring how his expert's testimony could mitigate the

testimony of the rebuttal witness; (4) trail counsel did not properly weigh the benefits of the case-

specific expert testimony against the costs of the rebuttal witness; and (5) trial counsel's failure to

elicit case-specific testimony left the jury to infer that Petitioner was not a victim of intimate

partner abuse.  The Court will consider each in turn.

    1.   <u>Failure to Follow the Advice of the Intimate Partner Abuse Expert</u>

       Petitioner argues that because trial counsel was inexperienced in presenting a defense based

on intimate partner abuse, he acted unreasonably by going against the advice of Ms. Cusick, an

expert in this area.  It would have been reasonable for the state court to disagree.  While Ms.

Cusick's frustration at having part of her opinion excluded is certainly understandable, she is not an

attorney, and as such, her opinions regarding legal strategy are entitled to little weight.  Trial

counsel attempted to educate himself in matters related to intimate partner abuse and hired Ms.

Cusick as an expert to assist him in that goal.  Trial counsel was clearly aware that Ms. Cusick was

prepared to testify with her case-specific opinion, but he made what Petitioner herself describes at a

"tactical decision," Pet. Mem. At 18, not to introduce that evidence at trial.  Given the potentially

damaging rebuttal testimony, the state court would clearly have been within the bounds of reason

in finding that Petitioner's trial counsel acted reasonably in his choice of which testimony to

present.  Because there is a reasonable argument that counsel's performance was not deficient,

Petitioner's habeas petition on grounds of ineffective assistance of counsel for failure to present

credible case-specific expert testimony regarding intimate partner abuse and its effects on

Petitioner is DENIED.

    2.   <u>Failure to Seek a Ruling on the Admissibility of the Rebuttal Witness's Testimony</u>

       Petitioner argues that her trial counsel acted unreasonably by deciding to omit Ms. Cusick's

case-specific opinion testimony without first seeking a ruling on the admissibility of the rebuttal

testimony.  Petitioner asserts that the rebuttal testimony would have been excluded under

California Evidence Code Section 352, and argues on this basis that trial counsel's failure to

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

challenge the "prurient and unnecessary rebuttal witness" constituted "objectively unreasonable"

behavior.

A court could reasonably find that counsel was reasonable to refrain from bringing such a

challenge.  Section 352 of the California Evidence Code says: "The court *in its discretion may*

exclude evidence if its probative value is *substantially outweighed* by the probability that its

admission will . . . create substantial danger of undue prejudice . . . ." (emphasis added).  Under a

standard weighted so heavily in favor of admitting evidence, the state court could have concluded

that the rebuttal witness's testimony would likely have been admitted even if counsel had brought

the challenge.  Counsel is not required to bring an unavailing motion in order to meet the *Srickland*

standard.  *See United States v. Quintero-Barraza*, 57 F.3d 836, 841 (9th Cir. 1995).  Accordingly,

Petitioner's habeas petition on grounds of ineffective assistance of counsel for failure to seek a

ruling on the admissibility of the rebuttal witness's testimony is DENIED.

3.   Failure to Explore How Ms. Cusick's Testimony Could Have Mitigated the Rebuttal
     Testimony

Petitioner argues that her trial counsel acted unreasonably by failing to explore with Ms.

Cusick how elements of her expert testimony could have been used to mitigate the damaging

testimony of the prosecution's rebuttal witness.  Petitioner claims that had counsel explored this

option, he would have discovered that Ms. Cusick was prepared to testify that much of Petitioner's

sexual behavior could be explained as a defensive/coping mechanism that she had developed to

avoid being abused.  Indeed, Petitioner asserts that the rebuttal testimony could have been

characterized as further evidence of the abuse that Petitioner suffered at the hands of her husband.

Accordingly, Petitioner asserts that her trial counsel failed her in neglecting to pursue such a

strategy, and that this failure constitutes constitutionally ineffective assistance of counsel.

While Petitioner's argument makes it clear that in hindsight, she disagrees with her trial

counsel's choices, it does not establish that her trial counsel acted unreasonably at the time.  In

order to grant Petitioner's habeas petition, this Court would have to find that the state court acted

unreasonably in finding that Petitioner's trial counsel provided constitutionally sufficient

representation.  While Petitioner may be correct that *better* trial counsel would have considered in

12

detail exactly what evidence could be marshaled to soften the blow of the rebuttal, that is not the question here. This Court cannot find that there exists no reasonable argument that the choice to keep the rebuttal testimony out altogether was objectively unreasonable. The prosecution's rebuttal witness was prepared to offer potentially damaging testimony. Rather than spending time and resources planning how to lessen the impact of that testimony, Petitioner's counsel chose to foreclose its introduction. This choice was within the realm of professionally reasonable behavior. Accordingly, this Court DENIES the petition as to the claim of ineffective assistance of counsel for failure to explore how Ms. Cusick's testimony could have mitigated the rebuttal testimony.

4.  <u>Failure to Properly Weigh the Costs of the Rebuttal Testimony Against the Benefits of Ms. Cusick's Case-Specific Testimony</u>

Similarly, Petitioner argues that her trial counsel unreasonably weighed the costs and benefits of Ms. Cusick's case-specific testimony in his decision to limit her to only general opinions. According to Petitioner, had Ms. Cusick been able to give her entire testimony, she would have helped corroborate Petitioner's own testimony and served as a bridge between Petitioner and the mostly white jury. Petitioner further claims that the marginal detrimental effect to her case due to the prosecution's rebuttal witness would have been small. In particular, Petitioner argues that the prosecutor had already introduced evidence that Petitioner was a "swinger," and thus more evidence on the same topic would have added little. Furthermore, Petitioner contends that Ms. Cusick's case-specific opinion could have been used to mitigate all of the "swinger" evidence (both from the prosecution's rebuttal witness and case-in-chief) by explaining it in light of Petitioner's status as a victim of intimate partner abuse. Accordingly, Petitioner argues that her counsel acted unreasonably in his weighing of the potential costs and benefits of Ms. Cusick's testimony.

This argument fails almost on its own terms. Petitioner is objecting to a tactical judgment call made by her attorney. Petitioner is not entitled to a flawless defense, or even good defense counsel, but only a reasonable one. In this case, as Petitioner admits, her attorney weighed the options. The fact that Petitioner thinks, in retrospect, that counsel should have weighed them differently does not establish a claim for ineffective assistance of counsel. The merits of the two

13

strategies are certainly debatable.  Because counsel made a tactical decision in weighing the costs and benefits of two options, the state court would have been reasonable in finding that counsel's performance was not ineffective.  The Court DENIES the petition on grounds of ineffective assistance of counsel due to the alleged misweighing of the costs and benefits of the case-specific expert testimony.

5. <u>Failure to Elicit Case-Specific Expert Testimony Left the Jury to Infer Petitioner Was Not a Victim of Intimate Partner Abuse</u>

Petitioner claims that her trial counsel's failure to elicit case-specific expert testimony about her left the jury to conclude that she was not, in fact, a victim of intimate partner abuse.  That is, Petitioner believes that Ms. Cusick's general testimony on intimate partner abuse actually worked against her.  Petitioner argues that by not eliciting Ms. Cusick's explicit testimony that Petitioner was a victim, her trial counsel caused the jury to infer that she was *not* a victim.  Because her principal defense was premised on a theory of intimate partner abuse, Petitioner argues that this failure fell below prevailing professional norms and was prejudicial, establishing constitutionally ineffective assistance of counsel.

Petitioner's speculative argument is unpersuasive.  Ms. Cusick testified extensively at trial about intimate partner abuse.  Petitioner's trial counsel also called multiple fact witnesses to testify in support of the proposition that Petitioner was a victim of intimate partner abuse.  Petitioner herself took the stand and described the types of abuse she suffered at the hands of her husband.  As discussed above, counsel had tactical reasons for choosing not to present the case-specific testimony, and this Court affords those tactical choices great deference.  The fact that the decision had a down side, as well as an up side, does not render it objectively unreasonable.  The state court could have so found.

Further, even if the choice had been unreasonable, a state court could reasonably have found that any such failing did not result in prejudice.  Even if Ms. Cusick had offered her case-specific testimony, the jury might have disbelieved her.  Or the jury may have believed that Petitioner was a victim of abuse even without the case-specific testimony, but found that this did not explain her behavior on the night in question.  It would not be unreasonable for a state court to

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

have found either of these things. And either finding would support a decision that there had been no prejudice. Accordingly, Petitioner's habeas petition on grounds of ineffective assistance of counsel for leaving the jury to infer that the expert did not believe Petitioner was the victim of intimate partner abuse is DENIED.

> **B. Ineffective Assistance of Counsel for Failure to Offer Other Defense Evidence and to Object to Prosecution Evidence**

Petitioner claims she was denied ineffective assistance of counsel based on her trial counsel's failure to offer particular pieces of evidence in her defense and his failure to object to prosecution evidence that Petitioner views as inadmissible. In particular, Petitioner cites her trial counsel's failure to present: (1) in-depth testimony about Gregory's abuse of Petitioner; (2) Petitioner's testimony and medical records about scrapes; (3) Petitioner's testimony or photos of a hair-pulling incident; (4) evidence that Gregory was a member of the Black Guerrilla Family; (5) evidence that Petitioner had sought information about divorce and restraining orders; (6) Petitioner's post-arrest statements corroborative of intimate partner abuse; (7) Petitioner's testimony about Gregory calling CPS on his sister; (8) expert evidence that Petitioner's vehicle had a mechanical defect which made it stall; (9) Petitioner's 911 statement that Gregory should help "save" Tiffany; and (10) evidence to impeach Gregory's initial statements to the police. She also complains about counsel's failure to object to prosecution evidence of: (1) her sexual behavior; (2) testimony and argument about "high conflict couples;" and (3) photographs of Petitioner's car on the street. The Court has already explained the standard for finding ineffective assistance of counsel, so without repeating it here, the Court will consider each of Petitioner's arguments in turn.

> 1. Failure to Present "In-Depth" Testimony about Gregory Chandler's Abuse of Petitioner

Petitioner argues that her trial counsel unreasonably failed to introduce more in-depth testimony regarding her abuse by Gregory. In particular, Petitioner points out that while Ms. Cusick assembled a list of forty-seven forms of abuse that Petitioner suffered, only a few of those were discussed at trial. Further, Petitioner argues that the forms of abuse that were discussed were handled in a perfunctory manner. Petitioner argues that such a truncated discussion of abuse was not a "tactical decision" as her trial counsel had admitted that he "did not think" to use Ms.

United States District Court
For the Northern District of California

1   Cusick's list as a tool for eliciting testimony from Petitioner.  Accordingly, Petitioner claims that

2   such an omission constitutes ineffective assistance of counsel.

3        The Court is not persuaded by Petitioner's argument that counsel's performance fell below

4   the constitutional standard.  To begin with, an attorney's post-hoc statement that his trial decisions

5   were not tactical does not establish ineffective assistance.  *See Edwards v. LaMarque*, 475 F.3d

6   1121, 1126 (9th Cir. 2007) (en banc).  Here, counsel's decision about how much testimony to offer

7   on the subject of Gregory's abuse of Petitioner could certainly fall within the bounds of reason.

8   Petitioner had already testified that Gregory punched her, slapped her, choked her, pushed her,

9   twisted her arms, and hit her with a crutch.  Petitioner's testimony was corroborated by other

10  witnesses, one of whom testified that she saw Petitioner with black eyes routinely and another of

11  whom corroborated the crutches incident.  Such evidence indicates that the jury had been made

12  aware of the nature of the abusive relationship that existed between Gregory and Petitioner.

13  Counsel might reasonably have believed that nothing would be gained by additional testimony on

14  this point.  The fact that in hindsight Petitioner may have wished for more does not render the

15  testimony counsel chose at the time to present unreasonably insufficient.  There is thus a

16  reasonable argument that counsel's decision not to continue to add more testimony about the abuse

17  was, if not wise, at least within the boundaries of professional norms as required by *Strickland*.

18       Further, the state court would have been reasonable in finding that failure to introduce

19  cumulative evidence, even if it did fall below the standard of professional norms, caused no

20  prejudice. The jury already had information about the nature of the relationship; further testimony

21  establishing the same thing would likely not have changed the result of the proceedings.  Petitioner

22  has not established that the state court would have to have been unreasonable to find that there was

23  either a lack of deficient performance or a lack of prejudice.  Accordingly, Petitioner's *Strickland*

24  claim for failure to introduce more extensive testimony about Gregory's abuse of Petitioner is

25  DENIED.

26       2.   Failure to Present Petitioner's Testimony and Medical Records about Scrapes

27       Petitioner argues that her trial counsel's failure to present Petitioner's testimony and

28  medical records explaining where she got her scrapes from constituted constitutionally deficient

16

1   performance.  According to petitioner, the scrapes were obtained when she was thrown from the

2   back of a car due to Gregory's intentionally reckless driving.  Petitioner does not explain how she

3   believes the introduction of such evidence would have resulted in a different result at trial, but

4   presumably she believes it would have painted a fuller picture of the abuse she suffered.

5       Again Petitioner's arguments are unpersuasive, even leaving aside Petitioner's failure to

6   demonstrate prejudice.  As with the other more detailed evidence concerning abuse discussed

7   above, this evidence concerned a point that the defense had already made, that Gregory was an

8   abusive husband.  Thus, "counsel could reasonably have decided to utilize his limited resources in

9   investigating other avenues rather than simply bolstering this one."  *Babbitt v. Calderon*, 151 F.3d

10  1170, 1174 (9th Cir. 1998).

11      Petitioner has not demonstrated that her trial counsel acted unreasonably, nor has she shown

12  how such conduct, if unreasonable, resulted in a different outcome.  Accordingly, there are two

13  grounds on which a court could reasonably have found that Petitioner's trial counsel acted

14  reasonably, thus her habeas petition on these grounds is DENIED.

15      3.   Failure to Present Petitioner's Testimony and Photos of the Hair-Pulling Incident

16      Petitioner argues that her trial counsel unreasonably failed to ask her about an incident

17  where Gregory pulled her hair so hard that when she later ran her hands through her hair it fell out.

18  Additionally, Petitioner argues that her trial counsel erred when he failed to introduce photographs

19  of Petitioner taken by a neighbor after the incident.  Petitioner also complains that trial counsel

20  never asked her about any of the pictures she had on her computer documenting bruises that

21  Gregory had given her.  Trial counsel has stated that he intended to ask Petitioner about these

22  pictures, but simply forgot.  *See* Pet. Mem. At 63 (citing State Pet. Exh. 9).  Such a failing,

23  according to petitioner, does not constitute reasonable attorney conduct, and as such should be

24  deemed ineffective assistance of counsel.

25      As an initial matter, as explained above, an attorney's post hoc admission that he believes

26  he made a mistake does not satisfy the performance prong of *Strickland.  See Edwards*, 475 F.3d at

27  1126.  The state court may simply have disbelieved counsel's post hoc explanation, or may have

28  determined that given the range of evidence counsel had considered on the point of the abusive

17

1    relationship, forgetting to pursue one particular incident was not a particularly serious failing.

2           More importantly, Petitioner concedes that this failure, standing alone, is not sufficient to

3    have made a difference in the outcome of trial.  Rather, Petitioner's argument is that "taken as a

4    whole, the ineffectiveness of counsel had a negative effect on the outcome of [Petitioner's] trial."

5    Reply at 32.  Unfortunately for Petitioner, the burden is hers to demonstrate that errors in her

6    counsel's conduct were prejudicial.  In light of the overwhelming evidence against Petitioner, she

7    has not established that that this error, even if the Court determined the error was unreasonable,

8    was prejudicial.  Accordingly, a reasonable state court could have found that the omission of the

9    hair-pulling evidence did not render the advice of Petitioner's trial counsel ineffective.  Petitioner's

10   habeas petition on these grounds is DENIED.

11        4.   Failure to Present Evidence that Gregory is a Member of the Black Guerrilla Family

12          Petitioner argues that her trial counsel should have asked her about her knowledge that

13   Gregory was a member of the prison gang, the Black Guerrilla Family, and how that association

14   was used to control her.  Petitioner asserts that it would have helped to explain her fear of Gregory,

15   thus bolstering her defense.

16          The state court could reasonably have rejected this argument either on performance grounds

17   or on prejudice grounds.  As Petitioner explains, the prosecutor had sought to exclude any

18   reference to Gregory's gang membership.  *See* Pet. Mem. at 64.  The Court did exclude it, on

19   grounds that it was irrelevant and highly prejudicial.  *See* Memorandum of Points and Authorities

20   in Support of Answer (hereafter Ans. Mem.) at 32.  Thus, the state court could have found that a

21   further attempt to introduce such evidence would have been unavailing, and thus not required in

22   order for counsel to meet his obligations under *Strickland*.  *See Quintero-Barraza*, 57 F.3d at 841.

23          In addition, Petitioner has failed to articulate a theory of prejudice.  Petitioner's argument

24   for the relevance of this evidence is effectively that it demonstrates that Gregory exerted control

25   over her.  *See* Pet. Mem. at 63-64.  But as discussed above, there was already a good deal of

26   evidence of the nature of Gregory's relationship with Petitioner.  That he was controlling and that

27   Petitioner feared him is clear from the testimony elicited at trial.  Thus, while Gregory's gang

28   membership may have had some probative value, it would have been limited, and the state court

18

1    would have been well within the bounds of reason in finding that it was unlikely to alter the result.

2    Accordingly, the Petition is DENIED as to the claim of ineffective assistance of counsel for failure

3    to present evidence of Gregory's gang membership.

4        5.  <u>Failure to Present Evidence that Petitioner Sought Information on Divorce and Restraining
        Orders</u>

5          Petitioner argues that her trial counsel acted ineffectively in failing to discover and present

6    evidence that Petitioner had sought information about restraining orders and a divorce.  Petitioner

7    claims that this information would have corroborated her claim that she had been abused and

8    shown that she tried to seek safety.

9          Petitioner's argument fails to place the relevant evidence in perspective.  The evidence that

10   Petitioner faults her trial counsel for not discovering is a single computer-generated map found in

11   her car.  While this map does lead to the Family Law Center where Petitioner had sought the

12   information on divorce and restraining orders, its relevance to a murder case may not have been

13   apparent.  Counsel with limited time and resources to prepare a defense need not chase down every

14   possible lead in adding further evidence of a fact already addressed.  *Babbitt,* 151 F.3d at 1174.

15   This evidence, like much of the evidence Petitioner cites, would have served to bolster the claim,

16   already made at trial, that Gregory was abusive and that Petitioner feared him.  Accordingly, the

17   state court could reasonably have found that counsel's failure to pursue the relevance of the map

18   did not render his performance constitutionally deficient.  Petitioner's habeas petition is DENIED

19   as to the claim that counsel was ineffective for failure to present the map evidence.

20       6.  <u>Failure to Introduce Petitioner's Post-Arrest Statements</u>

21         Petitioner argues that her trial counsel acted unreasonably by failing to offer Petitioner's

22   post-arrest statements to officers that she claims corroborate her intimate partner abuse defense.  In

23   particular, Petitioner complains that the jury should have heard her statement to the police: "Why

24   are y'all 10 deep over that mutha fucka?  Where was y'all when that mutha fucka was beat'n on

25   me?" and "Is he being charged with assault?"  Petitioner asserts that both statements corroborate

26   her defense theory and are inconsistent with the prosecution's theory of a cold-blooded murder.

27         Petitioner's argument lacks merit.  Once again, the evidence would have served primarily to

28

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

further support a claim the jury had already heard directly from Petitioner: that Gregory had abused her.  Further, the statement's harsh language could have made Petitioner seem unsympathetic to the jury; the state court could reasonably have found that refraining from introducing it was a reasonable decision.  And even if it was "an oversight" as trial counsel now asserts, *see* Pet. Mem. at 65, and even if that oversight had rendered counsel's performance deficient under *Strickland*, Petitioner has still failed to show prejudice.  Accordingly, Petitioner's habeas petition on these grounds is DENIED.

   7.   <u>Failure to Present Evidence that Gregory Called CPS on his Sister</u>

Petitioner complains that her trial counsel failed to introduce evidence that George called child protective services (CPS) on his sister two weeks before the shooting.  According to Petitioner, this incident demonstrated that Gregory would carry through with threats.  She argues that this action represents "an escalation of power, control and hurtfulness on Gregory's part."  Pet. Mem. at 66.

Despite Petitioner's assertion that "[t]his evidence is not 'merely cumulative,'" it is hard to see how Gregory's actions towards his sister would change the trial result.  As repeatedly explained above, the record is filled with evidence that Gregory was controlling, manipulative, and abusive.  Accordingly, evidence that Gregory took controlling actions towards his sister would have had little marginal probative value.  This fact defeats both a claim of deficient performance, as counsel could reasonably have elected not to pursue a line of questioning that would do little to aid his case; and a claim of prejudice, because the information would likely not have changed the trial result.  Accordingly, Petitioner's request for habeas relief is DENIED as to the claim that counsel was ineffective for failure to present testimony concerning the CPS incident.

   8.   <u>Failure to Introduce Evidence that Petitioner's Vehicle Had a Mechanical Defect</u>

Petitioner argues that trial counsel's failure to introduce evidence that Petitioner's car was the subject of a class action lawsuit and recall due to a faulty ignition module constituted ineffective assistance of counsel.  Petitioner claimed at trial that she parked her car a few blocks away from her apartment because it had stalled, not, as the prosecutor argued, because she was trying to deceive Gregory into thinking she was not home.  Petitioner argues that the testimony that

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1    her car still contained the original, recalled part would have added credibility to her testimony.

2           The state court could reasonably have found that counsel's decision on this point was

3    reasonable.  Petitioner fails to seriously address the fact that the inspecting mechanic found that the

4    car "drove straight and smooth" and "did not overheat and no dash warning lights were displayed"

5    during his two hour inspection drive.  Ans. Mem. at 43.  Additionally, the mechanic noted that the

6    flaw in the recalled part *could* cause the car to stall "but usually only during hot weather and

7    extreme engine load and/or extended idle periods." *Id.*  Furthermore, the mechanic found that

8    when the car did stall, it restarted immediately afterwards.  In short, the evidence was inconclusive

9    at best.  Counsel could reasonably have decided that the testimony would, on balance, be more

10   damaging than helpful, and the state court could have so found.  Accordingly, the Petition is

11   DENIED as to the claim that counsel was ineffective for failure to present the mechanic's report or

12   testimony.

13       9.   Failure to Introduce Petitioner's 911 Statement

14          Petitioner argues that her trial counsel acted unreasonably by failing to offer Petitioner's

15   statement, recorded on a 911 tape, "encouraging Gregory to call for medical assistance 'to save'

16   Tiffany."  Pet. Mem. at 67.  Petitioner argues that this statement would have rebutted the

17   prosecution's claim that the killing was premeditated because it demonstrates Petitioner's

18   "immediate desire to save Tiffany." *Id.*

19          The state court would have been reasonable in finding that counsel's decision to not seek to

20   introduce the statement did not run afoul of *Strickland*.  Petitioner's actual statement from the 911

21   tape was "You better call somebody to save that bitch on my floor!" *See* Ans. Mem. at 45, citing

22   State Pet. Exh. 7. Trial counsel has explained his tactical reason for failing to introduce the 911

23   call: fear that the jury would react poorly to Petitioner's use of the word "bitch" and her "angry

24   tone when saying it."  Ans. Mem. at 45, citing State Pet. Exh. 9.  Petitioner argues that her use of

25   the word "bitch" and "angry tone" could have been explained away by her expert as attributable to

26   either culture or three years of abuse at the hands of her husband.  But Courts must defer to tactical

27   decisions of counsel when they appear reasonable at the time.  *See. Quintero-Barraza,* 78 F.3d

28   at1349 (citing *Strickland*).  The state court would have been reasonable to defer to counsel's

21

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1   decision, even if Petitioner views it in hindsight as the wrong one.  Thus, the Petition is DENIED

2   as to the claim of ineffective assistance of counsel for failure to introduce the 911 statement.

3        10.  <u>Failure to Introduce Evidence to Impeach Gregory's Statements to Police</u>

4        Petitioner argues that her trial counsel should have impeached two false statements Gregory

5   made to police: that Petitioner had been committed to a mental hospital and that Gregory's name

6   was the only one on the lease.  Petitioner claims that Gregory's testimony (read in from a

7   transcript) was a key element of her conviction at trial, and therefore her trial counsel acted

8   unreasonably in not pointing out these two instances where Gregory had lied.

9        Petitioner's arguments on the two statements fail for different reasons.  With regards to the

10  statement that Petitioner had been committed to a mental hospital (the exact wording was that she

11  had been in a "loony bin twice"), Petitioner's trial counsel made a tactical decision not to impeach

12  the testimony.  Instead, he agreed to keep the statement wholly excluded from the trial, fearing that

13  the statement, although untrue, would nevertheless lead the jury to associate his client with mental

14  instability.  Ans. Mem. at 48 (citing State Pet. Exh. 9).   Trial counsel also observed that disproving

15  such a statement would be difficult, as it is "hard to prove a negative."  *Id.*  While Petitioner now

16  argues that her trial counsel could in fact have proved this negative, her trial counsel clearly

17  believed that the costs outweighed the benefits.  Accordingly, he made the reasonable tactical

18  decision to exclude the statement from the trial altogether.  The state court would have been

19  reasonable to find that this decision did not constitute deficient performance.

20       Petitioner also criticizes her trial counsel's failure to impeach Gregory's statement that his

21  was the only name on the lease to the apartment.  Because Petitioner's name was on the lease as

22  well, she argues that Gregory's statement should have been used to show that he was a liar.  But

23  this evidence would have gone only a very short distance toward establishing Gregory's propensity

24  to lie.  This kind of mundane detail, unrelated to the substance of the action, could just as easily

25  have been a mistake that Gregory made.  The state court could reasonably have found that counsel

26  acted within reason in deciding to allocate his time and resources elsewhere.  *See Richter*, 131 S.

27  Ct. at 789 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to

28  balance limited resources in accord with effective trial tactics and strategies.").  Thus, there is a

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1    reasonable argument that counsel acted reasonably in failing to impeach Gregory on these two

2    points.  Petitioner's habeas petition on these grounds is DENIED.

3         11. Failure to Object to Evidence of Petitioner's Sexual Behavior

4              Petitioner argues that her trial counsel acted unreasonably by not objecting to evidence of

5    her past sexual behavior as more unfairly prejudicial than probative.  Specifically, the government

6    introduced substantial evidence that the Chandlers engaged in a range of sexual activities with

7    other people, in person and over the internet, in support of the theory that Petitioner could not have

8    been in the "heat of passion" from jealousy when she killed Donaville.  Petitioner argues that

9    properly understood, this evidence was not relevant to the prosecution's theory, and was highly

10   prejudicial.

11             Petitioner raised this claim on direct appeal, and the state court rejected it, finding that

12   counsel made a tactical decision to allow the evidence because it was consistent with the defense

13   theory that Petitioner was under Gregory's sexual and emotional control.  Exh. A at 20-21.

14   Though counsel later declared that he did not have a tactical reason, *see* Ans. Mem. at 51 (citing

15   State Pet. Exh. 9), this type of post-hoc statement does not establish ineffective assistance; the state

16   court still had to assess the reasonableness of counsel's performance at the time.  *See Edwards*, 475

17   F.3d at 1126.  Even if, as Petitioner now argues, the state court's assessment was incorrect, it was

18   not outside of the bounds of reason to find that counsel's choice was reasonable at the time it was

19   made.

20             Further, Petitioner has once again failed to make a sufficient showing of prejudice.  While

21   Petitioner makes much of the fact that the prosecutor addressed Petitioner's "swinging" activities

22   on a number of occasions throughout the trial, including in closing argument, Petitioner does not

23   engage with the overwhelming amount of *other* evidence arrayed against her.   To find prejudice,

24   the state court would essentially have had to find that Petitioner was convicted not based on

25   eyewitness and circumstantial evidence of the crime, but because the jury wanted to punish her for

26   her sexual behavior.  It would have been reasonable for the state court to find this unlikely.

27   Accordingly, the Petition on grounds of ineffective assistance of counsel for failure to object to

28   evidence of Petitioner's sexual practices is DENIED.

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

12. <u>Failure to Object to Testimony about High Conflict Couples</u>

Petitioner argues that her trial counsel should have objected to prosecution's cross-examination of Ms. Cusick about so-called "high conflict couples."  She argues that this testimony allowed the prosecutor to incorrectly suggest to the jury that she and Gregory were such a couple, rather than a classic example of an abuser and victim.  Accordingly, Petitioner contends that allowing this line of questioning without an objection undermined her defense and constituted ineffective assistance of counsel.  In Petitioner's view, her trial counsel should have objected on the grounds that such questioning lacked foundation, was irrelevant, and risked misleading the jury.

Petitioner cites *Bloom v. Calderon*, 132 F.3d 1267, 1273 (9th Cir. 1997), for the proposition that allowing a defense expert to be turned against Petitioner "with devastating effect" constitutes prejudicial ineffectiveness.  Reply at 52-53.  But the facts of the instant case are readily distinguishable from those in *Bloom*.  First, in *Bloom*, the expert in question was the *sole* witness for the defense, where here, there were others.  Second, and more importantly, the *Bloom* court relied heavily on the fact that the trial counsel in that case did not secure the services of the witness until a few days before trial and left the witness preparation to a third year law student who was unaware of the defense theory to be advanced at trial.  There are no such facts here.  Thus, *Bloom* does not establish that counsel's performance was deficient.

Further, in this case, the state court rejected this claim on direct appeal, finding that counsel could have had a tactical reason for allowing the questioning.  *See* Exh. A at 22.  Specifically, the state court found that counsel might have felt that any testimony by the defense expert on violence between intimate partners would be beneficial to Petitioner's case, even if it did not directly support Petitioner's claim.  *Id.* Applying the "double" deference required for *Strickland* claims under AEDPA, *Pinholster*, 131 S.Ct. at 1403, this Court cannot find that the state court's denial was unreasonable.

Petitioner also complains that her trial counsel did not address the "high conflict couple" testimony on re-direct examination with Ms. Cusick or in his closing argument.  The state court could reasonably have found that this was a tactical decision to avoid drawing the jury's attention to the possibility that Petitioner and Gregory were a high-conflict couple, rather than having a

24

1   traditional abuser-victim relationship.  Much evidence was presented in trial that Petitioner had

2   violent tendencies, including threatening other women, trying to choke another prisoner, and

3   threatening a jail guard.  Based on this evidence, the jury might have been tempted to conclude that

4   Petitioner and Gregory were a high conflict couple.  Accordingly, counsel may have decided to

5   avoid the subject as a matter of strategy.  As a reasonable court could have found that Petitioner's

6   trial counsel acted reasonably, Petitioner's habeas petition on these grounds is DENIED.

7       13. Failure to Object to Photographs of Petitioner's Car

8       Finally, Petitioner takes issue with her trial counsel's failure to object to photographs of her

9   car parallel-parked on the street, introduced to show that she had not left her car there as the result

10  of a mechanical failure, as she claimed.  First, Petitioner argues that these photographs could have

11  been excluded because they were not timely disclosed.  Second, Petitioner argues that the

12  photographs were not relevant, as they were taken seven hours after the shooting, and that between

13  the time Petitioner parked the car and the time the photographs were taken, surrounding cars could

14  have come and gone.

15      The state court could have concluded that counsel did not object to this evidence because it

16  simply was not damaging.  Counsel need not raise every conceivable objection to comply with

17  *Strickland*; failure to object to a photograph that proves very little could hardly be thought to have

18  "so undermined[] the proper functioning of the adversarial process that the trial cannot be relied on

19  as having produced a just result."  *Strickland*, 466 U.S. at 686.  Thus, even if a better defense

20  lawyer might have objected to the photograph, it would not be unreasonable to conclude that in

21  neglecting to do so, counsel did not fall below the relevant standard.

22      Even if Petitioner could establish that counsel's failure to object was unreasonable, she

23  could not establish prejudice.  As the government explains, the photographs were turned over to the

24  defense on November 22, and the defense did not even begin its case until December 1.  Ans.

25  Mem. at 59.  The state court could reasonably have found that defense counsel had plenty of time

26  to incorporate the existence of the photos into his presentation.  Further, the jury was told when the

27  photographs were taken in relation to the crime, allowing them to assign them only what little

28  weight they might have been worth.  It is unlikely that the introduction of photographs of the car,

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

showing that it may or may not have been neatly parallel parked, tipped the balance in the

prosecution's favor, and the state court would certainly have been within reason to determine that it

did not.  Accordingly, Petitioner's habeas petition on these grounds is DENIED.

### C. Denial of Rights Guaranteed by the Confrontation Clause by Prosecution's Bad Faith Failure to Locate Gregory Chandler for Trial

Petitioner argues that the prosecution's failure to secure Gregory Chandler's presence at the

trial was the result of a bad faith effort which violated Petitioner's Sixth Amendment right to

confront witnesses against her.  In particular, Petitioner complains that the prosecution failed to

pursue Gregory with diligence after the transcript of his testimony was admitted at trial.

"The basic litmus of Sixth Amendment unavailability is [that] . . . prosecutorial authorities

have made a good-faith effort to obtain [the unavailable witness's] presence at trial."  *Ohio v.*

*Roberts*, 448 U.S. 56, 74 (1980) (quoting *Barber v. Page*, 390 U.S. 719, 724-25 (1968)).  "The

lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness."

*Christian v. Rhode*, 41 F.3d 461, 467 (9th Cir. 1994) (citing *United States v. Winn*, 767 F.3d 527,

530 (9th Cir. 1985)).[4]  "'Good faith' and 'reasonableness' are terms that demand fact-intensive,

case-by-case analysis, not rigid rules."  *Id*.  Under AEDPA, this Court must determine only

whether the state court's finding that the prosecution acted in good faith was within reason.

Petitioner's first argument asserts that, had the prosecution obtained the address of

Chandler's recent girlfriend Margo Swift, they would have noticed that it was close to a cell phone

tower that transmitted some of Gregory's phone calls.  According to Petitioner, this information

would have prompted an officer acting in good faith to stake out Ms. Swift's address to look for

Gregory.  Although Gregory was no longer living with Ms. Swift, he apparently continued to visit

her.

Petitioner's argument is unpersuasive.  Although Petitioner articulates additional steps that

the government could have taken in order to locate Gregory, merely identifying further steps that

---

[4] Petitioner relies on a four-part test for determining reasonableness announced by the Tenth Circuit in *Cook v. McKune*, 323 F.3d 825, 856-36 (10th Cir. 2003).  A successful habeas petition, however, requires a demonstration that the state court acted in a way that was contrary to clearly established Supreme Court precedent.  Because the Supreme Court has never adopted the Tenth Circuit's test, Petitioner's reliance on this standard is unavailing.

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

could have been taken is not sufficient to demonstrate bad faith. The relevant test is not whether the prosecution took all possible steps, but whether the prosecution put forth a good faith effort and went to reasonable lengths. Because this standard is flexible, the state court could have reasonably found that the prosecution acted in good faith without staking out Ms. Swift's residence.

Petitioner's second argument relies on a declaration submitted by Ms. Swift two years after Petitioner's trial, in which Ms. Swift claims that she called the inspector responsible for locating Gregory and told him that she could take him to Gregory. According to Ms. Swift, the inspector declined, saying it was no longer necessary since the trial was nearly over. Ans. Mem. at 66.

The state court faced the task of weighing this piece of evidence to determine both whether to believe Ms. Swift's declaration and whether the declaration, if credited, would establish bad faith. Presented with only a single uncorroborated declaration submitted two years after trial, the state court could reasonably have found that the government did indeed make a good faith effort to locate Gregory in spite of Ms. Swift's claim. Because Petitioner has not demonstrated that the state court acted unreasonably in finding no bad faith on the part of the prosecution, Petitioner's habeas petition is DENIED as to the Confrontation Clause claim.

## II. Request for Evidentiary Hearing

Petitioner requests an evidentiary hearing to further develop an evidentiary record on which to base her Confrontation Clause challenge. In particular, Petitioner wishes to elicit testimony from Matt Wasteney (the inspector who attempted to locate Gregory Chandler during trial), Margo Swift, Gregory Chandler, and Deneed Hayes (another of Gregory Chandler's girlfriends who may have known his whereabouts during trial). Petitioner argues that "the prosecution is in possession of critical information relevant to this issue," and that an evidentiary hearing is necessary to develop a full factual record for review. Pet. Mem. at 89.

Petitioner also argues that the evidentiary hearing would be useful with regards to the ineffective assistance of counsel claims. In particular, the government challenged the credibility of Petitioner's trial counsel's declaration, and Petitioner argues that an evidentiary hearing would be a good forum for resolving that credibility dispute.

Evidentiary hearings are governed by AEDPA, 28 U.S.C. § 2254(e)(2), which states:

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The focus of this statute is "on limiting the discretion of federal district courts in holding hearings." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1401 n.8 (2011).  Under AEDPA, "evidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id*. at 1400.  Thus, under *Pinholster*, satisfaction of § 2254(d)(1) is a threshold question that petitioners must overcome before they are entitled to an evidentiary hearing on any claim adjudicated in state court.  Moreover, while Petitioner contends that *Pinholster*'s limitation applies to only habeas challenges brought under § 2254(d)(1) and not under § 2254(d)(2), such a contention is directly contrary to the text of § 2254(d)(2), which allows review to take place "in light of the evidence presented in the State court proceeding."  Thus, regardless of which subpart of § 2254(d) applies, a petitioner must demonstrate that the state court acted unreasonably in light of the record presented in state court in order to obtain an evidentiary hearing.  As established above, Petitioner has failed to satisfy either prong of § 2254(d), and is thus not entitled to an evidentiary hearing.

Neither case relied on by Petitioner supports her contention that she is entitled to an evidentiary hearing.  *Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011), involved a petitioner whose claim was based on documents the prosecution had been actively withholding, and had not revealed until after the petitioner filed his federal habeas petition.  Because the petitioner in *Gonzalez* had good cause for not developing the contested evidence in state court—the actual withholding of evidence by the prosecution throughout the entire state court process—the Ninth Circuit remanded the case to the district court with instructions to stay the habeas proceedings to allow the petitioner to present his claim to the state court.  Otherwise, the Ninth Circuit reasoned, meritorious claims of improper withholding of evidence by prosecutors would consistently be

doomed to fail, so long as the prosecutors withheld the evidence for long enough. *Id.* at 979-80.  In this case, Petitioner has not claimed that evidence was withheld throughout the state court proceedings.  Rather, Petitioner suggests that she cannot present her claim fully without a hearing, whether in state or federal court.  Request for an Evidentiary Hearing, ECF No. 28, at 2.  The evidence she seeks to admit was not unavailable at the time the state court ruled.  *Gonzales* and its reasoning thus do not apply.

Further, *Johnson v. Finn*, 665, F.3d 1063 (9th Cir. 2011), is also inapplicable in this case.  In fact, the court in *Johnson* found that the Petitioner had overcome the § 2254(d) barrier because the state court adjudication involved an unreasonable application of federal law.  As established above, in this case, § 2254(d) bars relief; thus, *Johnson* is simply not applicable.  Accordingly, Petitioner's request for an evidentiary hearing is DENIED.

### III. Motion for Appointment of Counsel

Petitioner has twice requested that counsel be appointed to represent her in this matter.  ECF Nos. 1, 30.  As stated in the Court's Order Denying Motion for Appointment of Counsel, filed on June 14, 2010 (ECF No. 7), a district court may appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A(a)(2)(B).  The decision to appoint counsel is within the discretion of the district court.  *See Chaney v. Lewis,* 801 F.2d 1191, 1196 (9th Cir. 1986).  Appointment is mandatory only when the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations.  *Id.* The issues in this case remain well developed, and the interests of justice do not require appointment of counsel.  The request for appointment of counsel is DENIED.

### CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus, request for evidentiary hearing, and motion for appointment of counsel are all DENIED.  The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing §

29

2254 Cases, 28 U.S.C. foll. § 2254.  Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  Accordingly, no COA shall issue.  The Clerk of the Court shall enter judgment in favor of Respondent, and shall close the file.  **IT IS SO ORDERED.**

Dated: September 18, 2012

_____
LUCY H. KOH
United States District Judge

Case No.: 10-CV-02452-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS